## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA as subrogee of NOBERTO AND MARIA CLARO,<br><br>Plaintiff,<br><br>vs.<br><br>MAYTAG CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 3:02CV-1916 JBA

January 30, 2004

### MAYTAG CORPORATION'S
### LOCAL RULE 9(c)(1) STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 9(c)(1), Maytag Corporation("Maytag") submits the following statement of material facts for which there is no genuine issue to be tried:

### UNDISPUTED FACTS

1.     The plaintiff's Complaint alleges one count for product liability. (*See*, Exhibit A).

2.     On November 13, 2000, a fire occurred at the residence of Norberto and Maria Claro at 35 Edgewood Avenue, Waterbury, CT at approximately 5:30 P.M. (Id. at ¶7).

3.     The refrigerator was purchased four or five years prior to the date of the fire.  (See, Plaintiff's Answer to Interrogatories, No. 20, attached hereto as Exhibit B).

4.     The plaintiff has designated three expert witnesses in this case, Patrick Ariola, the Deputy Fire Marshal who investigated the fire, Peter S. Vallas, a cause and origin investigator and Frank Watkinson, Ph.D., a metallurgist, who are prepared to testify that a manufacturing defect or some malfunction in the Claro's refrigerator caused the fire.  (*See*, Plaintiff's Fed. R. Civ. P. 26(a)(2)(B) Expert Disclosures, attached as Exhibit C).

1

5.    Patrick Ariola cannot identify which component of the refrigerator allegedly malfunctioned. (Ariola Deposition, p. 89, 16-18, attached as Exhibit D).

6.    Patrick Ariola has never taken any engineering classes or had any extensive training in electrical repair or electrical appliances. (Ariola Deposition, p. 61, 8-20, attached as Exhibit D).

7.    Patrick Ariola concluded that the fire was caused by a "malfunction of the refrigerator/freezer". (See, Waterbury Fire Marshal's report, attached as Exhibit E).

8.    Peter S. Vallas opines that "an electrical malfunction and/or product defect existed within the equipment located at the rear base of the refrigerator". (See, Peter Vallas' January 10, 2001 report at p. 3, attached as Exhibit F).

9.    Peter S. Vallas never went to the fire scene. (Vallas Deposition, pp. 25-26, 24-25, 1-3, attached as Exhibit G.)

10.    Mr. Vallas found no evidence of an electrical failure in the refrigerator. (Vallas Deposition, p. 67, 4-6, attached as Exhibit G).

11.    Mr. Vallas found no evidence of an electrical malfunction in the power cord for the refrigerator. (Vallas Deposition, p. 79, 2-4, attached as Exhibit G).

12.    Mr. Vallas admits that his opinion that the defrost timer or related wiring in the refrigerator malfunctioned and caused the fire is "speculating until further analysis". (Vallas Deposition, p. 84, 11-15, attached as Exhibit G).

13.    Mr. Vallas has not examined any design specifications for the refrigerator. (Vallas Deposition, p. 84, 11-15, attached as Exhibit G).

14.    Mr. Vallas cannot say that the refrigerator differed in any way from its intended design at the time it left Maytag's possession. (Vallas Deposition, p. 87, 13-17, attached as Exhibit G).

2

15.    Mr. Vallas does not have an opinion regarding the design of the refrigerator. (Vallas Deposition, p. 87, 21-24, attached as Exhibit G).

16.    Mr. Vallas cannot identify the specific component or wire of the refrigerator that allegedly malfunctioned. (Vallas Deposition, p. 101, 4-9, attached as Exhibit G).

17.    Frank Watkinson, Ph.D. cannot identify the ignition source for the fire. (Watkinson Deposition, p.82, 9-11, attached as Exhibit H).

18.    Dr. Watkinson never saw any design specifications or wiring schematics for the refrigerator. (Watkinson Deposition, pp. 39-40, attached as Exhibit H).

19.    Dr. Watkinson cannot state whether a component in the refrigerator malfunctioned and caused the fire. (Watkinson Deposition, p.82, 12-17, attached as Exhibit H).

20.    Dr. Watkinson cannot state whether the refrigerator contained a defect when it left Maytag's possession. (Watkinson Deposition , p. 82, 18-21, attached as Exhibit H).

21.    None of the components of the refrigerator that Dr. Watkinson examined were ignition source for the fire. (Watkinson Deposition , p. 34, 1-4, attached as Exhibit H).

22.    The plaintiff has not identified any warnings which it alleges Maytag failed to provide with the refrigerator. (See, Plaintiff's Answer to Interrogatories, No. 12, attached as Exhibit B).

23.    In order to recovery under the doctrine of strict liability in tort the plaintiff must prove that: 1) the defendant was engaged in the business of selling the product; 2) the product was in a defective condition unreasonably dangerous to the consumer or user; 3) the defect caused the injury for which compensation was sought; 4) the defect existed at the time of sale; and 5) the product was expected to and did reach the consumer without substantial change in condition. Living & Learning Centre, Inc. v. Griese Custom Signs, Inc., 3 Conn. App. 661, 664 (1985).

24.    The plaintiff must prove the five elements to prevail on a strict liability claim. Living & Learning Centre, Inc. v. Griese Custom Signs, Inc., 3 Conn. App. 661, 664 (1985). (quoting Coe-Park Donuts, Inc. v. Robertshaw Controls Co., 1 Conn. App. 84, 86-87 (1983).

25.    Under either a theory of strict tort liability or implied warranty, it is necessary for the plaintiff to establish that the product was defective at the time of sale. Liberty Mutual Ins. Co. v. Sears, Roebuck & Co., 35 Conn. Sup. 687, 690 (1979).

26.    The doctrine of strict liability in tort in Connecticut recognizes three types of product defects: (1) improper design; (2) manufacturing defects; and (3) failure to warn that a product is unreasonably dangerous. Giglio v. Conn. Light & Power, 180 Conn. 230, 235-36 (1980).

27.    The second type of defect occurs during the manufacture of the product or component, and results in the product not meeting the manufacturer's own design specifications. "To say that a product failed to conform to specifications is just another way of saying that it was defectively manufactured." Miller v. United Technologies Corp., 233 Conn. 732, 779 (1995) (quoting Harduvel v. General Dynamics Corp., 878 F.2d 1311, 1321 (11th Cir. 1989) cert. denied, 494 U.S. 1030, 110 S. Ct. 1479 (1990)).

28.    Connecticut courts have concluded that "[i]n the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts." Living & Learning Centre, Inc. v. Griese Custom Signs, Inc., 3 Conn. App. 661 (1985) (collapse of sign) (quoting Liberty Mutual Ins. Co. v. Sears, Roebuck & Co., 35 Conn. Sup. 687, 690-91 (1979) (television as cause of fire).

29.    Circumstantial evidence of a defect is enough to take a case to a jury provided the plaintiff has introduced evidence as to two other matters: (1) . . . "plaintiff must present evidence which would tend to negate causes for an accident other than a defect in the product; and (2) . . .

4

plaintiff must present proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant." O'Connor v General Motors Corp., 1997 Conn. Super. 3343, *12 (1997) (quoting Jenkins v. Whittaker Corp., 785 F.2d 720, 732 (1986) (emphasis added).

30.    Evidence of a malfunction itself is not enough to sustain a claim under the products liability act without showing that the defect existed at the time of sale. Hunter v. Mazda of Milford, 1999 Conn. Super. LEXIS 695 (1999).

MAYTAG CORPORATION
By Its Attorneys

CAMPBELL CAMPBELL
EDWARDS & CONROY
PROFESSIONAL CORPORATION

Holly M. Polglase (ct 09276)
Timothy M. Roche (ct 24373)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was mailed, postage prepaid, via first class mail, on January 30, 2004 to:

Erik Loftus, Esquire
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, Connecticut 06096

Timothy M. Roche

5

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF CONNECTICUT

FILED

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA as subrogee of NOBERTO AND MARIA CLARO<br>Safeco Plaza<br>Seattle, WA 98185 | Civil Action No.<br><br>**302CV1916** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| Maytag Corporation<br>403 West 4th Street North<br>Newton, IA 50208 | |
| Defendant | OCTOBER 28, 2002 |

### COMPLAINT

NOW COMES Plaintiff, SAFECO INSURANCE COMPANY OF AMERICA, by and through its undersigned counsel, and hereby demands judgment against defendant, MAYTAG CORPORATION, and in support thereof avers as follows:

### PARTIES

1. Plaintiff, Safeco Insurance Company of America ("Safeco") is a corporation organized and existing under the laws of the State of Washington with a principal place of business located at Safeco Plaza, Seattle, Washington which at all times material hereto was duly authorized to issue insurance policies in the State of Connecticut.

2. Defendant, Maytag Corporation ("Maytag") is a corporation organized and existing under the laws of the state of Delaware with a principal place of business located at 403 West 4th Street North, Newton, Iowa which at all times material hereto was in the business of inter alia, manufacturing kitchen appliances including refrigerators.

## JURISDICTION AND VENUE (FEDERAL)

3.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds, exclusive of interest and costs, the sum of One Hundred Fifty Thousand Dollars ($150,000.00) and there is diversity of citizenship between plaintiff and defendant.

4.  Venue in this action is in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391 as the claim arose in this district.

## GENERAL ALLEGATIONS

5.  At all times material hereto, Plaintiff provided property insurance coverage to Noberto and Maria Claro ("Claro") under policy number OK5302985.

6.  At all times material hereto, the Claro residence was equipped with a refrigerator designed, manufactured and distributed by the defendant.

7.  On or about November 13, 2000, a fire originated in the kitchen area of the Claro home located at 35 Edgewood Avenue, Waterbury, Connecticut ("the premises").

8.  A defective Maytag "Magic Chef" refrigerator caused the fire and resulting damages.

9.  Pursuant to the terms and conditions of the policy, Safeco made payments to Claro.

10. Pursuant to the principles of legal and equitable subrogation, as well as the terms and conditions of the aforementioned policy of insurance, Safeco is subrogated to the rights of its insured to the extent of its payments.

## COUNT I

## CONNECTICUT PRODUCT LIABILITY ACT

11. Plaintiff incorporates by reference each and every allegation set forth above and below as though the same were fully set forth herein at length.

12. Defendant is a product manufacturer and product seller as defined by the Connecticut Product Liability Act, C.G.S. §52-572m, et. seq.

13. Defendant is liable and legally responsible for the losses suffered by plaintiff pursuant to the Connecticut Product Liability Act, C.G.S. §52-572m et. seq. in one or more of the following ways:

(a) designing, manufacturing, selling and/or otherwise placing into the stream of commerce a refrigerator that was in a defective condition, unreasonably dangerous to consumers, including plaintiff's insured herein;

(b) failing to adequately warn plaintiff's insured of the defects in the refrigerator when the defendant knew or should have known of the defects and that they constituted a danger;

(c) carelessly, recklessly and negligently designing, manufacturing, distributing and selling the refrigerator in a defective and unreasonably dangerous condition;

(d) carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the refrigerator and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

(e) carelessly, recklessly and negligently failing to discover defects in the refrigerator;

(f) carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the refrigerator;

(g) carelessly, recklessly and negligently failing to properly and adequately design and manufacture the refrigerator in order to provide a safe product;

(h) carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the refrigerator;

(i) carelessly, recklessly and negligently failing to remove the refrigerator from the market when the defendant knew or should have known of the defects in the refrigerator and that they constituted a danger;

(j) defendant impliedly warranted that the refrigerator was safe and fit for the purpose for which it was intended and was of merchantable quality, and defendant Maytag breached the aforesaid implied warranties in that the refrigerator was not of merchantable quality, fit and safe for the purpose for which it was intended;

(k) defendant, by virtue of advertisements, promotional literature, and/or sales brochures, made certain express warranties to the general public, and to plaintiff's insured in particular, that the refrigerator was safe and free from defects and the defendant breached its express warranties.

14. As a direct and proximate result of defendant's designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the fire and damages referred to above occurred.

WHEREFORE, Plaintiff Safeco demands judgment against Defendant Maytag in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with interest, the cost of this action, fees, punitive damages and such other and further relief as this Court deems just and proper.

THE PLAINTIFF,


By _Margaret Ralphs_

Margaret Ralphs, Esq., CT14251
LAW OFFICES OF STUART G.
BLACKBURN
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116
(860) 292-1221 Facsimile
sgblackburn@worldnet.att.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA as subrogee of NOBERTO AND MARIA CLARO, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 3:02CV-1916 JBA |
| MAYTAG CORPORATION, | ) ) | May 1, 2003 |
| Defendant. | ) ) ) | |

## COVER SHEET RE:  PLAINTIFF'S ANSWERS
## TO DEFENDANT'S FIRST SET OF INTERROGATORIES

The Plaintiff, **SAFECO INSURANCE COMPANY OF AMERICA a/s/o**

**NORBERTO AND MARIA CLARO,** hereby gives notice that it has filed its

answers to Defendant's FIRST SET OF INTERROGATORIES dated April 18,

2003.

THE PLAINTIFF,

BY: _____
MARGARET RALPHS, ESQ.
Law Offices of Stuart G.
Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
Tel. (860) 292-1116
Fax (860 292-1221
Fed. Ct. #ct14251

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA as subrogee of NOBERTO AND MARIA CLARO,          ) ) ) ) | |
| Plaintiff,       ) ) | |
| vs.         ) ) | CIVIL ACTION NO. 3:02CV-1916 JBA |
| MAYTAG CORPORATION,       ) ) | April 18, 2003 |
| Defendant.       ) ) | |

## PLAINTIFF'S ANSWERS TO MAYTAG CORPORATION'S
## FIRST SET OF INTERROGATORIES

Maytag Corporation ("Maytag") propounds the following interrogatories to the plaintiff, Safeco Insurance Company of America a/s/o Noberto and Maria Claro, to be answered under oath pursuant to Fed. R. Civ. P. 33:

### DEFINITIONS

A.    The term "refrigerator" shall refer to the "Magic Chef refrigerator" to which reference is made in paragraph 8 of the plaintiff's Complaint.

B.    The term "incident" shall mean the alleged November 13, 2000 fire alleged in paragraph 7 of the plaintiff's Complaint.

C.    The term "person(s)" shall mean natural persons and corporations, business entities and/or governmental entities.

D.    A request for identification shall be understood to seek the person's name and last known address.

## INTERROGATORIES

### INTERROGATORY NO. 1

Describe the incident in complete detail.

Answer:     Noberto Claro came home and informed his wife, Maria Claro that he smelled smoke. Maria Claro responded that she did not smell smoke and went into the kitchen and opened one of the refrigerator doors to retrieve food in preparation of dinner. Upon opening the door, she saw smoke and called her husband into the kitchen. Noberto Claro opened the door and saw flames. Noberto Claro attempted in vain to move the refrigerator out of the house.

### INTERROGATORY NO. 2

Please identify the following persons by stating their names and last known addresses:

a.      Each person who witnessed the incident or was present at the scene of the incident within one hour of its occurrence;

Noberto Claro, Maria Claro, Noberto Claro, Jr., David Pais and Margarita Pais. Additionally, fire and police personnel identified in reports produced in Exhibit A, Plaintiff's Response to Request for Production of Documents were present.

b.      Each person who has inspected the accident scene and/or the refrigerator and/or the refrigerator's components, on your behalf since the incident;

Peter Vallas, Peter Vallas Associates, Inc., 105 Main Street, Hackensack, NJ 07601.
Police and fire personnel identified in Exhibit A in Plaintiff's Response to Request for Production.
Melissa Ferguson, Safeco claim representative
Rick Fradette, Safeco claim representative
Jim at J A Houde Builders, Inc., 122 Chimney Hill Road, Wallingford, CT 06492.
Al Fichtel, J. P. Maguire, 17 Berkshire Road, Sandy Hook, CT 06482, mailing address: P.O. Box 3307, Newton, CT 06470.

c.   Every person (other than counsel) who has participated in the investigation of the incident; and
Peter Vallas, Peter Vallas Associates, Inc., 105 Main Street, Hackensack, NJ 07601.
Police and fire personnel identified in Exhibit A in Plaintiff's Response to Request for Production.
Melissa Ferguson, Safeco claim representative
Rick Fradette, Safeco claim representative

2

d.  All police and/or fire department personnel present at the accident scene following the incident.

Please see Exhibit A in Plaintiff's Response to Request for Production.

## INTERROGATORY NO. 3

Identify the refrigerator by model number, year of manufacture and serial number, state the present or last known location of the refrigerator, where and under what circumstances it was last seen by you, the name and address of the person who has the refrigerator in his or her possession and the name and address every owner or possessor of the refrigerator from the time that it was manufactured until the present, and give the inclusive dates for each owner.

Answer:    The model number, year of manufacture and serial number are unknown at this time. The refrigerator is currently located at Peter Vallas Associates, 105 Main Street, Hackensack. The refrigerator was last seen by the plaintiff as the loss location after the fire. Noberto and Maria Claro purchased the refrigerator new from Brooklyn Appliance, Waterbury, Connecticut approximately four to five years before the fire and were the sole owners and possessors of the refrigerator from the time of the purchase until the date of the fire. The refrigerator was located at the loss location from it was delivered by Brooklyn Appliance until Peter Vallas took the refrigerator from the loss scene after the fire. The plaintiff does not know the chain of possession from the time of manufacture to delivery to Brooklyn Appliance.

## INTERROGATORY NO. 4

Describe in detail every alteration, change or repair made to the refrigerator from the time of manufacture to the incident and from the incident to the present and set forth the name and address of every person or entity performing each alteration, change or repair and the date each was performed.

Answer:    There were no alterations, changes or repairs made from the time of delivery until the time of the fire. The plaintiff is unaware of any other alterations, changes or repairs.

## INTERROGATORY NO. 5

Describe in detail all maintenance or repair work performed on the refrigerator from the time of its purchase up to the present, including in your answer the name and address of all persons or entities performing the repair or maintenance work and the date and reason for all repair or maintenance work.

Answer:    There was no maintenance or repair work.

## INTERROGATORY NO. 6

3

Identify by name and address every person who has inspected and/or photographed the refrigerator from the time of the incident to the present and identify any person who examined, inspected and/or photographed the refrigerator following the incident but immediately prior to any alteration, change or repair made to the refrigerator.

Answer: There were no repairs made to the refrigerator following the fire. Peter Vallas inspected and photographed the refrigerator. Melissa Ferguson and the Waterbury Fire Department took other photos of refrigerator.

INTERROGATORY NO. 7

Itemize in detail each loss and expense for which you seek recovery in this litigation.

Answer: Itemization of damage was produced in Exhibit C, Plaintiff's Response to Request for Production, additional description of damage is set forth in the electronic claim log notes produced in Exhibit A, Plaintiff's Response to Request for Production.

$500 deductible incurred by the insured
$940 emergency board up J.A. Houde
$3,369.09 emergency services and winterization
      [$1,949.31 was paid under contents coverage; $1,366.78 paid under
      dwellingcoverage]
$46,563.19 actual cash value of contents
$106,907.02 actual cash value of dwelling
$11,700 loss of use [6.5 months at $1,800 per month]
TOTAL:    $169,979.30

INTERROGATORY NO. 8

Describe in detail each and every defect in the refrigerator which you allege caused the incident and/or the resulting damages.

Answer:    The lower portion of the refrigerator caught fire.

INTERROGATORY NO. 9

Describe each and every piece of physical evidence that indicates the existence of the defect(s) described in response to interrogatory 8.

Answer:    The remains of the refrigerator and loss scene.

INTERROGATORY NO. 10

Describe in detail how each and every alleged defect in the refrigerator contributed to cause the incident.

4

Answer:    The plaintiff asserts that the refrigerator was defective as it caught fire during normal use.

INTERROGATORY NO. 11

Describe each and every act or omission on the part of Maytag which you contend caused the incident or the damages that resulted from the incident.

Answer:    The condition of the refrigerator was such that it caught fire.

INTERROGATORY NO. 12

Set forth <u>verbatim</u> the warnings and instructions which you allege Maytag failed to give you and state how the warning would have prevented injury to you.

Answer:    Unknown, as at this time, the plaintiff does not have a copy of written materials attendant to the refrigerator at the time it was placed in the stream of commerce.

INTERROGATORY NO. 13

State whether you allege Maytag breached any express warranty to you and, if so, set forth <u>verbatim</u> each express warranty given and explain in detail all facts upon which you rely to support your contention that Maytag breached the express warranty and how this breach proximately caused the incident of the resulting damages.

Answer:  Unknown at this time.

INTERROGATORY NO. 14

Set forth in detail each and every fact upon which you rely to support your contention that the refrigerator was manufactured improperly or manufactured with improper materials.

Answer:    The refrigerator was purchased new, was not altered or damaged (before the fire) during the time it was owned by Noberto and Maria Claro and caught fire during normal use.

INTERROGATORY NO. 15

If you contend that the refrigerator violated or did not meet any law, regulation, statute, standard, voluntary standard, code or guideline, identify each law, regulation, statute, standard, voluntary standard, code or guideline violated and describe in detail how the washer/refrigerator did not meet or violated each.

Answer:    Unknown at this time.

5

## INTERROGATORY NO. 16

Identify all documents which you contend are authored by and/or attributable to Maytag with regard to this action or its subject matter.

Answer:       Unknown at this time.

## INTERROGATORY NO. 17

Identify each person whom you expect to offer expert testimony on your behalf at trial and as to each such person:

a.    State the subject matters on which he or she will testify;
b.    State the substance of the facts and opinions to which he or she will testify; and
c.    Summarize the grounds for each opinion.

Answer:       It is anticipated that the plaintiff will offer the expert testimony of Peter Vallas of Peter Vallas Associates relative to the origin of the fire and is expected to testify in accordance with his report of January 10, 2001 produced in Exhibit B, Plaintiff's Production of Documents.  At this time, it is unknown whether there will be additional expert testimony offered and the plaintiff will comply with the Scheduling Order.

## INTERROGATORY NO. 18

Identify any recalls and/or government investigations which you contend are relevant to your allegations of defect in the refrigerator, and state all facts upon which you rely to support your claim that the condition described in the recalls and/or investigations existed in the subject washer/refrigerator at the time of the incident.

Answer:       Unknown at this time as the model and serial numbers of the refrigerator are unknown.

## INTERROGATORY NO. 19

Identify all other similar incidents which you claim are substantially similar to the incident by stating the date, the location and the persons and entities involved in every such substantially similar incident.

Answer:       OBJECTION.  The plaintiff objects pursuant to Local Rule 26(b)(2) as the documents sought should already be in the possession of the defendant and as such it would be more convenient, less burdensome and less expensive for the defendant to develop this information. Notwithstanding the objection and subject to it, the plaintiff states that it is unknown at this time, in the event that such documents are developed during discovery, they will be provided, however, absent such a discovery it is the plaintiff's position that the defendant is the most likely source of the documents requested.

6

## INTERROGATORY NO. 20

With respect to the installation of the refrigerator, please state the following:

a.    the date the refrigerator was installed;

b.    the identity of the person(s) who installed the refrigerator;

c.    how the refrigerator was installed; and

d.    the materials used in the installation of the refrigerator.

Answer:    The refrigerator was installed by Brooklyn Appliance approximately four to fire years before the fire.

MAYTAG CORPORATION
By Its Attorneys

CAMPBELL CAMPBELL
EDWARDS & CONROY
PROFESSIONAL CORPORATION

_____
Holly M. Polglase CT 09276
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was mailed, postage prepaid, via first class mail, on February 5, 2003 to:

Margaret Ralphs, Esquire
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, Connecticut 06096

_____
Holly M. Polglase

7

## CERTIFICATION

THIS IS TO CERTIFY THAT I, SUSAN GULLER, have read the foregoing answers to Interrogatories and state that they are true and accurate to the best of my knowledge and belief under pains and penalties of perjury on this 28th day of April, 2003 ~~September, 2002~~.

9

## CERTIFICATION

I hereby certify that the foregoing Cover Sheet and Plaintiff's Answers to Defendant's First Set of Interrogatories have been mailed this 1st day of May, 2003, first class mail, postage prepaid to the following:

Holly M. Polglase, Esq.
Timothy Roche, Esq.
Campbell, Campbell, Edwards & Conroy
One Constitution Plaza
Boston, MA  02129


_____
Margaret Ralphs, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SAFECO INSURANCE COMPANY OF        )
AMERICA as subrogee of NOBERTO     )
AND MARIA CLARO,                   )
                                   )
      Plaintiff,                   )
                                   )
vs.                                )        CIVIL ACTION NO. 3:02CV-1916 JBA
                                   )
MAYTAG CORPORATION,                )
                                   )        JULY 1, 2003
                                   )
      Defendant.                   )
                                   )

## PLAINTIFF SAFECO INSURANCE COMPANY A/S/O NOBERTO AND MARIA CLARO RULE 26 DISCLOSURE

1.    __NAME AND ADDRESS OF WITNESS__

    Peter S. Vallas
    Peter Vallas Associates, Inc.
    105 Main Street
    Hackensack, NJ 07601

    Frank S. Watkinson, Ph.D.
    Spectrum Engineering
    1111 South Main Street
    Cheshire, CT 06410

    Deputy Fire Marshal Patrick Ariola
    Waterbury Fire Marshal
    235 Grand Street
    Waterbury, CT

SAFECO INSURANCE COMPANY OF AMERICA,
By its Attorney,


By_____

Margaret Ralphs, Esq.
Law Offices of Stuart G. Blackburn
Two Concorde Way
P. O. Box 608
Windsor Locks, CT 06096
Tel. 860-292-1116
Fax: 860-292-1221
Fed. Bar No.: CT14251

- 3 -

**COURT:**

Office of the Clerk
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510