UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

FILED

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA as subrogee of NOBERTO AND MARIA CLARO<br>Safeco Plaza<br>Seattle, WA 98185<br><br>Plaintiff,<br><br>v.<br><br>Maytag Corporation<br>403 West 4th Street North<br>Newton, IA 50208<br><br>Defendant | Civil Action No.<br><br>302CV1916<br><br><br>JURY TRIAL DEMANDED<br><br><br>OCTOBER 28, 2002 |

## COMPLAINT

NOW COMES Plaintiff, SAFECO INSURANCE COMPANY OF AMERICA, by and through its undersigned counsel, and hereby demands judgment against defendant, MAYTAG CORPORATION, and in support thereof avers as follows:

### PARTIES

1.  Plaintiff, Safeco Insurance Company of America ("Safeco") is a corporation organized and existing under the laws of the State of Washington with a principal place of business located at Safeco Plaza, Seattle, Washington which at all times material hereto was duly authorized to issue insurance policies in the State of Connecticut.

2.  Defendant, Maytag Corporation ("Maytag") is a corporation organized and existing under the laws of the state of Delaware with a principal place of business located at 403 West 4th Street North, Newton, Iowa which at all times material hereto was in the business of inter alia, manufacturing kitchen appliances including refrigerators.

## JURISDICTION AND VENUE (FEDERAL)

3.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds, exclusive of interest and costs, the sum of One Hundred Fifty Thousand Dollars ($150,000.00) and there is diversity of citizenship between plaintiff and defendant.

4.  Venue in this action is in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391 as the claim arose in this district.

## GENERAL ALLEGATIONS

5.  At all times material hereto, Plaintiff provided property insurance coverage to Noberto and Maria Claro ("Claro") under policy number OK5302985.

6.  At all times material hereto, the Claro residence was equipped with a refrigerator designed, manufactured and distributed by the defendant.

7.  On or about November 13, 2000, a fire originated in the kitchen area of the Claro home located at 35 Edgewood Avenue, Waterbury, Connecticut ("the premises").

8.  A defective Maytag "Magic Chef" refrigerator caused the fire and resulting damages.

9.  Pursuant to the terms and conditions of the policy, Safeco made payments to Claro.

10. Pursuant to the principles of legal and equitable subrogation, as well as the terms and conditions of the aforementioned policy of insurance, Safeco is subrogated to the rights of its insured to the extent of its payments.

## COUNT I

## CONNECTICUT PRODUCT LIABILITY ACT

11. Plaintiff incorporates by reference each and every allegation set forth above and below as though the same were fully set forth herein at length.

12. Defendant is a product manufacturer and product seller as defined by the Connecticut Product Liability Act, C.G.S. §52-572m, et. seq.

13. Defendant is liable and legally responsible for the losses suffered by plaintiff pursuant to the Connecticut Product Liability Act, C.G.S. §52-572m et. seq. in one or more of the following ways:

(a) designing, manufacturing, selling and/or otherwise placing into the stream of commerce a refrigerator that was in a defective condition, unreasonably dangerous to consumers, including plaintiff's insured herein;

(b) failing to adequately warn plaintiff's insured of the defects in the refrigerator when the defendant knew or should have known of the defects and that they constituted a danger;

(c) carelessly, recklessly and negligently designing, manufacturing, distributing and selling the refrigerator in a defective and unreasonably dangerous condition;

(d) carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the refrigerator and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

(e) carelessly, recklessly and negligently failing to discover defects in the refrigerator;

(f) carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the refrigerator;

(g) carelessly, recklessly and negligently failing to properly and adequately design and manufacture the refrigerator in order to provide a safe product;

(h) carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the refrigerator;

(i) carelessly, recklessly and negligently failing to remove the refrigerator from the market when the defendant knew or should have known of the defects in the refrigerator and that they constituted a danger;

(j) defendant impliedly warranted that the refrigerator was safe and fit for the purpose for which it was intended and was of merchantable quality, and defendant Maytag breached the aforesaid implied warranties in that the refrigerator was not of merchantable quality, fit and safe for the purpose for which it was intended;

(k) defendant, by virtue of advertisements, promotional literature, and/or sales brochures, made certain express warranties to the general public, and to plaintiff's insured in particular, that the refrigerator was safe and free from defects and the defendant breached its express warranties.

14. As a direct and proximate result of defendant's designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the fire and damages referred to above occurred.

WHEREFORE, Plaintiff Safeco demands judgment against Defendant Maytag in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with interest, the cost of this action, fees, punitive damages and such other and further relief as this Court deems just and proper.

THE PLAINTIFF,


By _____
Margaret Ralphs, Esq., CT14251
LAW OFFICES OF STUART G.
BLACKBURN
Two Concorde Way
P.O. Box 608
Windsor Locks, CT  06096
(860) 292-1116
(860) 292-1221 Facsimile
sgblackburn@worldnet.att.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SAFECO INSURANCE COMPANY OF      )
AMERICA as subrogee of NOBERTO   )
AND MARIA CLARO,                 )
                                 )
            Plaintiff,            )
                                 )
vs.                              )      CIVIL ACTION NO. 3:02CV-1916 JBA
                                 )
MAYTAG CORPORATION,              )
                                 )      JULY 1, 2003
                                 )
            Defendant.            )
                                 )

## PLAINTIFF SAFECO INSURANCE COMPANY A/S/O NOBERTO AND MARIA CLARO RULE 26 DISCLOSURE

1.    NAME AND ADDRESS OF WITNESS

Peter S. Vallas
Peter Vallas Associates, Inc.
105 Main Street
Hackensack, NJ 07601

Frank S. Watkinson, Ph.D.
Spectrum Engineering
1111 South Main Street
Cheshire, CT 06410

Deputy Fire Marshal Patrick Ariola
Waterbury Fire Marshal
235 Grand Street
Waterbury, CT

SAFECO INSURANCE COMPANY OF AMERICA,
By Its Attorney,


By_____

    Margaret Ralphs, Esq.
    Law Offices of Stuart G. Blackburn
    Two Concorde Way
    P. O. Box 608
    Windsor Locks, CT  06096
    Tel. 860-292-1116
    Fax: 860-292-1221
    Fed. Bar No.:  CT14251

- 3 -

COURT:

Office of the Clerk
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

FIRE AND EXPLOSION ANALYSIS • ANALYTICAL LABORATORY
INVESTIGATIVE ENGINEERING SERVICES

# PETER VALLAS ASSOCIATES Inc.

## A Professional Corporation

Internet: http://www.petervallas.com
E-mail: experts@petervallas.com

★ **Corporate Headquarters**
105 Main Street
Hackensack, NJ 07601
(201) 487-8901
Fax: 201-487-1253

★ **Northern Regional Office**
106 Washington Avenue
Endicott, NY 13760
(607) 785-8250
Fax: 607-785-6541

★ **Eastern Regional Office**
100 Mill Plain Road
Danbury, CT 06811
(203) 791-0100
Fax: 203-791-0200

★ **Northwestern Regional Office**
169 North Main Street
Warsaw, NY 14569
(716) 786-9980

★ **Laboratory Facilities**
85 Zabriskie Street
Hackensack, NJ 07601
(201) 487-0266

★ **Pennsylvania Regional Office**
Pennsylvania Avenue
Philadelphia, PA 19130
(215) 564-2488

★ **Northeastern Regional Office**
1740 Massachusetts Avenue
Boxborough, MA 01719
(978) 264-9221
Fax: (978) 264-9224

Date of Report:    January 10, 2001

Total Pages:    25

Mr. Rich Fradette
SAFECO INSURANCE COMPANY
P. O. Box 9202
Forestville, CT 06010

Fax Number:    <u>860-589-9448</u>

☑ VIA MAIL AND FACSIMILE ( 4 PAGES)

File:    003184
Re :    CLARO, NORBERTO
<u>Loss:</u>    35 Edgewood Avenue, 1st Fl.
            Waterbury, CT 06706
C/F:    56A003184168
Pol.:    56A003184168
D/L :    November 13, 2000

Prepared by:    Peter S. Vallas, CFEI, CFII
                Chief Executive Officer

**PETER VALLAS ASSOCIATES Inc.** reserves the right to amend and/or
supplement this report in the event additional information, documentation or
evidence becomes available.

**THIS REPORT FURNISHED AS PRIVILEGED AND
CONFIDENTIAL TO ADDRESSEE. RELEASE TO ANY OTHER
COMPANY, CONCERN, OR INDIVIDUAL IS SOLELY THE
RESPONSIBILITY OF ADDRESSEE.**

• National Fire Protection Association • National Association of Fire Investigators • International Association of Arson Investigators •
• New Jersey Chapter IAAI • New York Chapter IAAI • International Association of Bomb Technicians and Investigators • American Concrete Institute •
• Building Officials and Code Administrators International • International Society of Fire Services Instructors • Private Detectives Association •

# PETER VALLAS ASSOCIATES Inc.

# PRODUCT ANALYSIS

## PURPOSE OF THE ASSIGNMENT

In accordance with your request, on-site examinations and securing of a refrigerator and other components were performed for the purpose of identifying the cause of a fire occurrence. It was reported that the fire originated in the refrigerator as witnessed by the homeowner. After careful on-site examinations, follow-up investigation, and laboratory analysis, the following are the results of our findings.

## DESCRIPTION OF THE STRUCTURE

The subject structure was identified as a wood frame building and indicated to be a private residence. Our inspections were confined to, but not limited to, the kitchen in which the refrigerator and fire damage existed.

## FIRE ORIGIN AND CAUSE ANALYSIS

On-site examination and securing of physical evidence were conducted on November 16, 2000. The site examination clearly suggested that the fire did originate within the refrigerator. Fire damage to the refrigerator was extensive. An examination was made of all electrical wiring in the wall, including the wall receptacle. It was noted that no evidence of an electrical failure was found, therefore eliminating the electrical wiring in the building as a cause of the fire occurrence.

In the kitchen there was a dishwasher and coffeemaker. On the opposite side of the wall examinations indicated that they were affected by some slight heat and smoke, but were not involved in the cause of the fire.

Examinations made of other room areas revealed that smoke and heat were an issue throughout the house, but once again, I ruled out any evidence of fire developing from any other location.

Overall examinations made of the refrigerator revealed evidence of severe fire damage, particularly to the interior compartment. The fire patterns throughout the structure indicated that some patterns did not exist where the fire was originally located. It was ultimately learned that upon discovering the fire burning in the rear base of the refrigerator, the homeowner attempted to drag it out the door, but was unsuccessful. The fire damage in this particular hallway leading to the rear door clearly suggested development from the fire burning within the refrigerator itself.

The refrigerator, along with three outlets, a power strip, and a cell phone charger, were all secured from the scene and transferred to our laboratory facilities for further examinations and analysis.

---

FIRE AND EXPLOSION ANALYSIS ★ ANALYTICAL LABORATORY ★ INVESTIGATIVE ENGINEERING SERVICES

# PETER VALLAS ASSOCIATES Inc.

003184
Page 2

## OTHER RELEVANT INFORMATION

Follow-up conversations with the homeowner indicated that it was approximately four to five years old. It was purchased new at Brooklyn Appliance in Waterbury, Connecticut. Mrs. Claro was cooking when she detected the odor of smoke. She opened the refrigerator and saw smoke and flames at the bottom of the refrigerator against the back wall on the interior of the unit. The insureds attempted to remove the refrigerator from the premises, but were unsuccessful. They did not have any paperwork, manuals, or sales slips for the refrigerator. They also knew of no repair work or servicing to the refrigerator prior to the fire. No other product or item was plugged into the outlet servicing the refrigerator power cord.

## LABORATORY ANALYSIS AND/OR TESTING

Laboratory inspections and analyses are conducted in accordance with investigative procedures. Specialized engineers associated with our firm can perform continued investigative engineering or testing. Additional invasive or destructive analyses may also be required pending authorization from all interested parties associated with the investigation on a case.

> PETER VALLAS ASSOCIATES Inc. recommends that any interested parties reviewing this document be aware we may be retaining property/evidence relating to this loss. It is mandatory that we be notified of any potential interests. Lack of notification may result in the ultimate destruction of the property/evidence.

Overall examinations of the refrigerator revealed no nameplate or identification label whatsoever. Examinations revealed severe fire damages to the interior compartment to the point that most of the plastic material was either consumed or melted down. The fire patterns on the side and rear of the unit were consistent with evidence of fire development from within the unit.

Clearing and sifting at the base of the unit revealed evidence of a severe meltdown and the uncovering of electrical wiring and other components could not be performed.

An examination made of the power cord revealed no evidence of any short-circuiting, beading, or failure. The rear of the unit where the compressor, fan motor, and condensing coil were located, along with other wires revealed no evidence of any failure or fire development from this compartment. It is obvious that the fire originated within the base of the unit, and in all probability, a defrost timer or related wiring is the potential ignition source. Until the material is removed and X-raying of the melted plastic is performed, no further conclusive opinion on the exact item can be made. It is know, however, that this refrigerator, only four to five years old, ultimately had a defective and/or malfunctioning electrical component or wiring that ultimately caused the fire occurrence. The lack of any physical damage and prior servicing would clearly indicate that the

---

FIRE AND EXPLOSION ANALYSIS ★ ANALYTICAL LABORATORY ★ INVESTIGATIVE ENGINEERING SERVICES

# PETER VALLAS ASSOCIATES Inc.

manufacturer's product was defective in some way, which ultimately resulted in a failure and the fire damages that exist.

Detailed examinations made of the three outlets removed from the kitchen revealed no evidence of electrical short-circuiting, arcing, or any failure to suggest their involvement in the cause of the fire occurrence.

Examining the power strip and the remains of the cell phone charger revealed that they were affected by external heat and flame conditions. Slight melting of these materials did exist, but once again, they are not consistent with the eyewitness account of the fire developing in the refrigerator, and there is no physical evidence to suggest failure or their involvement in the cause of the fire occurrence. These items have been ruled out, and are considered victims of the fire occurrence.

Our laboratory examination has confirmed that the fire originated within the subject refrigerator, and the refrigerator is the direct cause of the fire.

## CONCLUSIONS

Subsequent follow-up conversations were held with the homeowner in an attempt to locate any manuals or paperwork, and/or receipts for the refrigerator. The insureds reconfirmed that the papers had burned up in the fire, and they did not have copies. They also confirmed that the name that was on the refrigerator was Magic Chef.

It is the opinion of this organization that the subject fire occurrence developed as a direct result of an electrical malfunction within the refrigerator unit. All fire patterns, the eyewitness account, and laboratory analysis confirms fire development from the refrigerator. An electrical malfunction and/or product defect existed within the equipment located at the rear base of the refrigerator. When sufficient levels of fuel, heat, and oxygen were simultaneously attained, the subject fire propagated to a free-burning state, subsequently causing the damages that exist.

At this time, it is recommended that legal counsel be consulted in order to evaluate the potential responsibility and involvement of the manufacturer of the refrigerator.

It is also recommended that the manufacturer be placed on notice regarding their potential involvement. The physical evidence will be secured at our laboratory facility pending their notification and the potential property inspection with the manufacturer and our office.

FIRE AND EXPLOSION ANALYSIS ★ ANALYTICAL LABORATORY ★ INVESTIGATIVE ENGINEERING SERVICES

# PETER VALLAS ASSOCIATES Inc.

003184
Page 4

We want to thank you for the opportunity to have been of service to you.  If any additional information is required or follow-up is to be conducted, please contact us.

Respectfully submitted,

PETER VALLAS ASSOCIATES Inc.

Peter S. Vallas, CFEI, CFII
Chief Executive Officer

PSV:mem
Encl.

## PHOTOGRAPHIC DOCUMENTATION